# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| JEREMY BAILEY, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) CAUSE NO. 1:11-CV-00169 |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Jeremy Bailey appeals to the district court from a final decision of the Commissioner of Social Security denying his application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits.[1] (Docket # 1.) For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. PROCEDURAL HISTORY

Bailey applied for DIB in January 2007, alleging that he became disabled as of December 11, 2005. (Tr. 15, 150-57, 192.) The Commissioner denied his application initially and upon reconsideration, and Bailey requested an administrative hearing. (Tr. 78-79, 84, 88.) Administrative Law Judge ("ALJ") Michelle Lindsay conducted a hearing on September 9, 2009, at which Bailey (who was represented by counsel), his mother, and a vocational expert testified. (Tr. 34-77.)

On November 9, 2009, the ALJ rendered an unfavorable decision to Bailey, concluding

---

[1] All parties have consented to the Magistrate Judge. (Docket # 15.) *See* 28 U.S.C. § 636(c).

that he was not disabled because, despite the limitations caused by his impairments, he could perform a significant number of light work jobs in the economy. (Tr. 15-28.) The Appeals Council denied Bailey's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6); *see* 20 C.F.R. § 404.981.

Bailey filed a complaint with this Court on May 20, 2011, seeking relief from the Commissioner's final decision. (Docket # 1.) Bailey essentially alleges three flaws with the ALJ's decision: (1) that she erred at step three by failing to find that he did not meet or equal Listing 1.04A, Disorders of the Spine; (2) that she improperly denied assigning controlling weight to the opinion of his treating pain management specialist, Dr. Stensland, representing that he was "permanently disabled"; and (3) assigned a residual functional capacity ("RFC") that was not supported by substantial evidence. (Br. of Pl. 14-19.)

## II. FACTUAL BACKGROUND[2]

### *A. Bailey's Background*

At the time of the ALJ's decision, Bailey was thirty-six years old; had a tenth grade education, which included special education classes; and possessed work experience as a welder/pipe fitter and maintenance industrial repairman. (Tr. 27-28, 71, 150, 193, 197, 271.) In his DIB application, Bailey alleged that he was disabled as a result of "problems with [his] back."[3] (Tr. 192.)

---

[2] In the interest of brevity, this Opinion recounts only the portions of the 449-page administrative record necessary to the decision.

[3] More particularly, Bailey lists the following spinal ailments in his opening brief: developmental wedging at T12 and L1, chronic pain syndrome, post laminectomy syndrome, failed back surgery, bilateral lumbar facet arthropathy, bilateral sacroiliitis, left lumbar radiculopathy, bilateral lower extremity radiculitis, lumbar spondylosis, bilateral cervical facet arthropathy, cervical degenerative disk disease, and cervicothoracic scoliosis. (Br. of Pl. 6-7.)
    In addition, Bailey recites a laundry list of other ailments in his opening brief: a 2005 injury to his left knee; left shoulder problems, including a strain, acromioclavicular joint osteoarthritis with inferiorly placed spurring and

2

At the hearing, Bailey testified that he lives in his two-story house with several friends and that he is able to drive a car; he has an eight-year-old daughter that occasionally stays with him. (Tr. 41-42, 50.) His typical day involves taking medication, reading, watching television, and trying to "get comfortable" by alternating between sitting and standing. (Tr. 46-47, 61-62.) His friends do most of the cooking, household chores, and grocery shopping, although he does occasionally go to the store for a few items. (Tr. 47-48.) He independently cares for his personal hygiene, but getting into and out of the shower is challenging. (Tr. 48.) He rarely leaves the house, but in the past has enjoyed fishing and "mudding" with a four-wheel drive vehicle. (Tr. 49, 59.)

Bailey testified that his back pain started after a fall in 2005. (Tr. 51.) He rated his pain as an "eight" on a ten-point scale, explaining that the pain, which is centered in his lower back and left leg, is "pretty much constant every day." (Tr. 52.) He elaborated that although he takes several pain medications, they cause him to feel tired and do not provide much relief. (Tr. 52-53, 64.) Due to his back discomfort, he gets only two to three hours of sleep a night. (Tr. 51.) He testified that other than his back, he has no problems that limit his ability to work. (Tr. 53.)

As to his physical capacity, Bailey testified that he could walk for ten minutes, but then would need to sit for fifteen to twenty minutes; he thought he could stand for twenty minutes before needing to sit again. (Tr. 53-54.) He represented that he uses a cane while standing or walking. (Tr. 54.) Bailey estimated that he could sit for thirty minutes at a time, but then would need to stand or walk. (Tr. 54-55.) He stated that he could not lift more than five pounds, though

---

tendinosis of the supraspinatus tendon, and left shoulder pain; left wrist pain; bradycardia; insomnia; headaches; learning disability NOS with weak left hemisphere functioning; disorder of written expression; chronic pain disorder; major depressive disorder; mood disorder secondary to chronic pain; generalized anxiety disorder; adjustment disorder; and partner relational problem. (Br. of Pl. 8-10.)

3

he acknowledged that he could indeed lift a gallon of milk. (Tr. 55.) When asked about his mental status, Bailey reported that he easily gets frustrated and takes medication for his depression. (Tr. 56.) He stated that, for the most part, he gets along well with people and can concentrate while reading.[4] (Tr. 57-58.)

### B. Summary of the Relevant Medical Evidence

In 2003, Bailey suffered from some back pain, which was treated with epidural injections but did not completely resolve. (Tr. 412.) In 2005, he went to the emergency room after a slip and fall, complaining of neck, back, and leg pain. (Tr. 66, 354-57, 370-76, 681.) He began seeing Dr. Robert Shugart, an orthopaedic surgeon, for his pain, and an MRI revealed bulging disks with narrowing from L3 to S1. (Tr. 308-09.) Lumbar spine discography was positive. (Tr. 308-09; 668-72.) In January 2006, Dr. Shugart opined that it would be "tough" for Bailey to perform the heavy lifting, bending, and twisting associated with his current job and that he would "ultimately need to get into lighter work." (Tr. 405-06.)

In February 2006, Bailey underwent a lumbar spinal fusion. (Tr. 309-13.) By May 2006, Dr. Shugart opined that Bailey could return to work, but could perform only "minimal" bending, twisting, and stretching and no lifting over ten pounds. (Tr. 395, 397.)

On May 26, 2006, Bailey underwent a psychological evaluation by Victor Rebman, Ph.D., for Indiana vocational rehabilitation services. (Tr. 325-28.) Dr. Rebman concluded that Bailey functions within the average range of intelligence but that he had a learning disability. (Tr. 326-28; *see also* Tr. 299.)

In July 2006, Dr. Shugart removed all of Bailey's restrictions with the exception of a

---

[4] Bailey's mother also testified at the hearing and essentially corroborated his testimony. (Tr. 65-67.)

fifty-pound lifting limitation. (Tr. 391, 393-94.) Later in 2006, Bailey was in a car accident and also had a slip and fall that increased his back symptoms. (Tr. 386.) In December 2006, Dr. Shugart permanently restricted him from lifting more than fifty pounds, but assigned him no other limitations. (Tr. 385.) Bailey then applied for DIB in January 2007, alleging disability as of December 2005. (Tr. 150.)

On March 5, 2007, F. Kladder, Ph.D., a state agency psychologist, reviewed Bailey's records and concluded that he did not have a severe mental impairment. (Tr. 418.) His opinion was later affirmed by a second state agency psychologist. (Tr. 456.)

The next day, Bailey was examined by Diane Thomas, a mental health counselor. (Tr. 447-51.) She noted symptoms of depression, agitation and frustration, and difficulty with concentrating and remembering. (Tr. 449.) She thought it would be difficult for him to learn a new job because of his depression and that his concentration and recall issues exacerbated his learning difficulties. (Tr. 450.) She recommended that he attend counseling; her counseling sessions primarily focused on helping Bailey cope with his stress and anxiety over his physical limitations. (Tr. 447-55.) In July 2007, Ms. Thomas penned a letter stating that Bailey's physical pain prohibited him from maintaining regular employment. (Tr. 679; *see* Tr. 674-78.)

Also in March 2007, Bailey was examined by Dr. Kinzi Stevenson at the request of the State Agency. (Tr. 433-37.) Dr. Stevenson's impression was that Bailey had decreased range of motion in lumbar flexion and in straight leg raising. (Tr. 436.) He was able to ambulate both short and long distances and demonstrated good muscular strength. (Tr. 436.) However, he had a slightly unsteady gait and thus Dr. Stevenson thought that he should not ambulate on uneven terrain or frequently carry more than twenty pounds. (Tr. 436.) Dr. Stevenson found no

5

limitation in Bailey's ability to sit, stand, walk, or lift in an eight-hour workday with normal breaks, but "some" limitation in bending, stooping, and crouching. (Tr. 436.)

On April 11, 2007, Dr. B. Whitley, a state agency physician, reviewed Bailey's record and opined that he could lift ten pounds frequently and twenty pounds occasionally; stand or walk six hours in an eight-hour workday; sit for six hours in an eight-hour workday; frequently balance and climb ramps or stairs; and occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, or scaffolds. (Tr. 439-45.) His opinion was later affirmed by a second state agency physician. (Tr. 457.)

In May 2007, Bailey was evaluated by Dr. David Stensland, a physiatrist, for his chronic low back pain. (Tr. 489-90.) Bailey demonstrated very guarded movement patterns and had pain upon extension; stability, strength, and muscle tone, however, were within normal limits. (Tr. 489.) A straight leg raise test was negative. (Tr. 489.) Dr. Stensland continued Bailey's fifty-pound lifting restriction and prescribed various pain medications. (Tr. 487-88.)

In August 2007, a MRI showed status post lumbosacral spinal fusion without obvious complication and minor degenerative changes. (Tr. 485.) Dr. Stensland observed that Bailey could not sit upright comfortably and ambulated with a guarded gait pattern. (Tr. 482.) Dr. Stensland diagnosed Bailey with "failed back syndrome" and found that he likely would be able to perform sedentary or light activity in a work setting, but not a "physically demanding job." (Tr. 482-83.)

In November 2007, Bailey was hospitalized briefly due to suicidal ideation. (Tr. 530.) Upon discharge, Dr. Don Smith, a psychiatrist at the Northeastern Center, evaluated him. (Tr. 530-31.) He observed that Bailey's memory was reasonably intact but that his judgment

6

appeared impaired; Dr. Smith, however, thought that much of Bailey's lack of comprehension was due to his lifestyle rather than any deficiency in mental functioning. (Tr. 531.) Dr. Smith diagnosed him with chronic pain disorder, mood disorder secondary to chronic pain; assigned him a Global Assessment of Functioning ("GAF") score of 60; and prescribed Prozac.[5] (Tr. 531.) The next month, Dr. Smith commented that Bailey appeared to be "looking for disability." (Tr. 523.) Dr. Smith continued to manage Bailey's mental health medications through October 2008. (*See* Tr. 497-531.)

In early 2008, Dr. Stensland continued to keep Bailey off work. (Tr. 467-75.) On May 27, 2008, Dr. Stensland penned a letter to Bailey's insurance company, indicating that he believed Bailey was "permanently disabled" as of the date of his spinal fusion surgery, February 8, 2006. (Tr. 466.) In October 2008, Dr. Stensland represented that Bailey was "unable to perform gainful employment, as he has a limited ability to lift anything over five pounds," and restricted him from any bending, twisting, or stretching. (Tr. 461-62.)

By July 2008, Bailey told Ms. Thomas that he was feeling "pretty good" again, despite going through a divorce. (Tr. 548.) However, in October, Ms. Thomas reported that Bailey was again really struggling emotionally. (Tr. 546.) In December, Ms. Thomas wrote that Bailey's depression was no longer paralyzing him as it did in the past. (Tr. 677.) In January, she referred to Bailey's depression as "low-grade" (Tr. 675), and in March, she thought that Bailey was "more upbeat" than she had seen him in a long time (Tr. 610). Several times in her

---

[5] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed., Text Rev. 2000). A GAF score of 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.*

documentation, Ms. Thomas noted that Bailey had reported going fishing and "mudding," which seemed to lift his spirits. (*See, e.g.*, Tr. 605, 606, 609.)

In August 2009, Bailey underwent a psychological evaluation by Kay Marie Roy, Psy.D., at the Bowen Center. (Tr. 694-96.) Mental status findings were essentially unremarkable, except for some difficulty with reciting dates of events in his life. (Tr. 694-96.) He was diagnosed with major depressive disorder, recurrent, moderate. (Tr. 696.)

In September 2009, Bailey underwent a functional capacity evaluation. (Tr. 681-86.) He used a cane and exhibited reduced range of motion in his lumbosacral spine, a slow and limping gait, and numbness in his left lower extremity. (Tr. 681-83.) The physical therapist concluded that Bailey was unable to do a "physically demanding job" or a job that required a certain posture for more than one hour at a time. (Tr. 684.) The physical therapist also noted that Bailey scored high in inappropriate symptoms and in Waddell's testing. (Tr. 684.)

In November 2009, Bailey underwent a trial of a spinal cord stimulator implant. (Tr. 715-17.) It provided "tremendous relief" with respect to his left lower leg pain, but his low back was "still bothering him some." (Tr. 715.) Bailey also received several steroid injections from April 2009 to June 2010. (Tr. 648, 656, 743, 749.)

### III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as

8

adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

## IV. ANALYSIS

### A. *The Law*

Under the Act, a claimant is entitled to DIB if he establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's

impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[6] *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step or, with respect to steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B. The ALJ's Decision

On November 9, 2009, the ALJ rendered her decision. (Tr. 15-28.) She found at step one of the five-step analysis that although Bailey had worked after his alleged onset date, his jobs lasted for such short periods of time that they could be considered to be unsuccessful work attempts. (Tr. 17.) At step two, the ALJ concluded that Bailey had the following severe impairments: degenerative disk disease of the lumbar spine, status post lumbar spine fusion surgery, and depression. (Tr. 17.) At step three, the ALJ determined that Bailey's impairment or combination of impairments were not severe enough to meet or equal a listing. (Tr. 17-18.)

Before proceeding to step four, the ALJ determined that Bailey's testimony of debilitating limitations was not credible to the extent it was inconsistent with the following RFC:

> [T]he claimant has the residual functional capacity to perform light work . . . except that he is only occasionally able to climb, balance, stoop, crouch, crawl,

---

[6] Before performing steps four and five, the ALJ must determine the claimant's RFC, that is, what tasks the claimant can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

10

and kneel. In addition, the claimant is limited to only simple, repetitive tasks due
to moderate limits in his ability to maintain attention and concentration.

(Tr. 18.) Based on this RFC and the vocational expert's testimony, the ALJ found at step four that Bailey was unable to perform his past relevant work as a welder/pipe fitter and industrial repairman, which required at least medium exertion. (Tr. 27.) The ALJ found at step five, however, that Bailey could perform a significant number of other unskilled light jobs within the economy, including parking lot attendant, office helper, information clerk, and non-post office mail clerk. (Tr. 28.) Therefore, Bailey's claim for DIB was denied. (Tr. 28.)

### C. The ALJ's Step-Three Finding That Bailey's Back Impairment Did Not Meet or Equal Listing 1.04A Is Supported by Substantial Evidence

First, Bailey argues that the ALJ erred by failing to conclude that he met or equaled Listing 1.04A, Disorders of the Spine. As he sees it, he met or equaled Listing 1.04A before his February 8, 2006, surgery because his MRI revealed a disk bulge with a mass effect on the L5 nerve root and, since his back surgery ultimately failed as evidenced by his diagnosis of "failed back surgery," he must still meet or equal Listing 1.04.[7] (Br. of Pl. 15.) For the following reasons, Bailey's argument is unpersuasive.

To meet or equal a listed impairment, a claimant must satisfy *all* of the criteria of the listed impairment. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006); *Maggard v. Apfel*, 167 F.3d 376, 379-80 (7th Cir. 1999). "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively." *Caviness v. Apfel*, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998). The criteria of Listing 1.04A is as follows:

---

[7] As a threshold matter, Bailey's argument that he met listing 1.04A before his February 8, 2006, surgery falls short, as his alleged onset date is December 11, 2005, just two months earlier, which does not satisfy the twelve-month durational requirement for disability. *See* 42 U.S. C. § 423(d)(1)(A).

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
>   A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

20 C.F.R. § 404, Subpart P, App. 1, 1.04A. The claimant bears the burden of proving his condition meets or equals a listed impairment. *Ribaudo*, 458 F.3d at 483; *Maggard*, 167 F.3d at 379-80.

Specifically, as to medical equivalence, "[a] claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Booth v. Comm'r of Soc. Sec.*, No. 1:06-cv-122, 2008 WL 744230, at *11 (S.D. Ohio Mar. 19, 2008) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)). "Medical equivalence requires that there be a medical finding equivalent to *each and every criterion* for a particular impairment." *Jackson v. Sullivan*, No. 91 C 7975, 1992 WL 142614, at *5 (N.D. Ill. June 10, 1992) (emphasis added) (citing *Zebley*, 493 U.S. at 531); *see Bellmore v. Astrue*, No. 4:08-cv-94, 2010 WL 1266494, at *14 (N.D. Ind. Mar. 25, 2010) ("A claimant must meet the criteria in the capsule definition, as well as the criteria in the subsidiary paragraphs." (citations omitted)).

Here, the ALJ expressly contemplated Listing 1.04A, but observed that the medical evidence of record did not meet or equal the Listing's criteria, or, for that matter, any other listing's criteria. (Tr. 17.) Specifically, the ALJ pointed out that there was *no* evidence that Bailey had experienced motor loss or abnormal reflexes for a period of twelve consecutive

months—criteria for Listing 1.04A. (Tr. 17.) In particular, the ALJ observed, several times in her decision, that upon examination Bailey's motor function was generally within normal limits, and he exhibited no signs of muscle atrophy. (Tr. 20, 22, 24, 26; *see, e.g.*, Tr. 413, 435, 439, 681, 741, 769.)

To reiterate, Bailey "bears the burden of presenting 'medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'" *Booth*, 2008 WL 744230, at *11 (emphasis in original) (quoting *Zebley*, 493 U.S. at 530); *see Gonzales v. Astrue*, No. 2:09-cv-573, 2010 WL 5811902, at *8 n.9 (D. Utah Oct. 27, 2010) (same); *Carrillo v. Astrue*, No. SA-09-CA-44-XR, 2010 WL 2136438, at *5 (W.D. Tex. May 26, 2010) (same). In challenging the ALJ's step-three finding, however, Bailey fails to specifically cite to *any* evidence that undercuts the ALJ's findings concerning lack of motor loss. (*See* Br. of Pl. 14-15; Reply Br. 3-4.) This is fatal to his argument. *See, e.g., Callaway v. Astrue*, No. 1:10-cv-01245, 2012 WL 1014833, at *8 (S.D. Ind. Mar. 22, 2012) (affirming the ALJ's step-three finding that claimant failed to meet or equal Listing 1.04A where claimant failed to produce evidence of motor loss accompanied by sensory or reflex loss); *Abbott v. Astrue,* No. 10-921-CJP, 2011 WL 5834529, at *6-7 (S.D. Ill. Nov. 21, 2011) (same); *Franks v. Comm'r of Soc. Sec.*, No. C-1-06-810, 2008 WL 648719, at *6 (S.D. Ohio Mar. 10, 2008) (same); *Freeman v. Barnhart*, No. 05-1287-JTM, 2006 WL 4059099, at *4 (D. Kan. Aug. 2, 2006) (same).

Moreover, in reaching her decision, the ALJ relied upon the assessment of the state agency physicians, who concluded that Bailey's impairments did not meet or equal a listing. The state agency physicians completed Disability Determination and Transmittal forms at the initial and reconsideration levels and concluded that Bailey was not disabled. (Tr. 78-79.) The

Seventh Circuit Court of Appeals has articulated that "[t]hese forms conclusively establish that consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (citations and internal quotation marks omitted). Consequently, "[t]he ALJ may properly rely upon the opinion of these medical experts." *Id.* (citing *Scott v. Sullivan*, 898 F.2d 519, 524 (7th Cir. 1990)); *see also* SSR 96-6p, 1996 WL 374180, at *2.

Accordingly, Bailey fails to carry his burden of establishing that he satisfies all of the criteria for Listing 1.04A. *Booth*, 2008 WL 744230, at *11 ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify." (citing *Zebley*, 493 U.S. at 530)); *see Bellmore*, 2010 WL 1266494, at *14 (same). The ALJ's step-three finding that Bailey did not meet or equal a listing is supported by substantial evidence. *See, e.g., Lewis v. Astrue*, No. 4:10-cv-1131, 2011 WL 4407728, at *23 (E.D. Mo. Sept. 22, 2011) (affirming the ALJ's step-three finding that claimant did not meet or equal Listing 1.04A where claimant offered only conclusory statements in his brief but no medical evidence).

*D. The ALJ's Discounting of Dr. Stensland's Opinion Is Supported by Substantial Evidence*

Next, Bailey contends that the ALJ erred by failing to assign controlling weight to the opinion of Dr. Stensland, his treating physiatrist, who represented that he was "permanently disabled." Bailey's argument, however, is inapposite to the applicable Social Security regulations and Seventh Circuit case law.

The Seventh Circuit has acknowledged that "more weight is generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions

14

and circumstances." *Clifford*, 227 F.3d at 870; *see* 20 C.F.R. § 404.1527(d)(2). However, this principle is not absolute, as "a treating physician's opinion regarding the nature and severity of a medical condition is [only] entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Clifford*, 227 F.3d at 870; *see Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002); 20 C.F.R. § 404.1527(d)(2).

Furthermore, a claimant is not entitled to DIB "simply because a physician finds that the claimant is 'disabled' or 'unable to work.'" *Clifford*, 227 F.3d at 870. The determination of disability is reserved to the Commissioner. *Id.*; *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995); 20 C.F.R. § 404.1527(e)(1); SSR 96-5p ("[A] medical source statement must not be equated with the administrative finding known as the RFC assessment."). In fact, "treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5p; *see Frobes v. Barnhart*, No. 06 C 1305, 2006 WL 3718010, at *8 (N.D. Ill. Nov. 20, 2006); 20 C.F.R. § 404.1527(e)(3). "Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether the individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." SSR 96-5p; *see Frobes*, 2006 WL 3718010, at *8.

Here, the ALJ penned two paragraphs on Dr. Stensland's opinion, acknowledging that he opined in August 2007 that Bailey could not perform "physically demanding" work, in May 2008 that he was "permanently disabled," and in October 2008 that he was unable to perform gainful employment because he was unable to lift more than five pounds or bend, twist, or stretch. (Tr. 20, 24.) The ALJ, however, correctly chose not to assign great weight to Dr.

15

Stensland's opinion that Bailey was "disabled" because it addressed "an issue that is reserved for the Commissioner." (Tr. 20.) Of course, Bailey's argument that this opinion from Dr. Stensland, a treating physician, is entitled to controlling weight is without merit, as 20 C.F.R. § 404.1527(e)(3) specifically instructs an ALJ not to "give any special significance to the source of an opinion on issues reserved to the Commissioner . . . ."

Furthermore, although Bailey does not specifically challenge the ALJ's consideration of Dr. Stensland's opinion that he could lift no more than five pounds, the ALJ also adequately explained his rationale for discounting that severe limitation, articulating that it was inconsistent with Bailey's physical examination findings, the objective medical evidence as a whole, and the majority of the other medical source opinions of record. (Tr. 20.) Specifically, the ALJ observed that Dr. Stensland's clinical findings were essentially unremarkable, except for guarded movement patterns and, at times, an antalgic gait. (Tr. 24; *see, e.g.*, Tr. 462, 465, 467, 469, 472, 474, 477-78, 482, 487-90.) Of course, "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the Commissioner] will give that opinion." 20 C.F.R. § 404.1527(d)(3); *see Smith v. Apfel*, 231 F.3d 433, 441 (7th Cir. 2000) (discounting a physician's opinion because it was, among other things, internally inconsistent); *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) (finding that a treating physician's progress notes about claimant's ability to ambulate did not provide adequate clinical support for his later restrictions on a residual capacity form).

As evidence of inconsistency with other evidence, the ALJ pointed out that Bailey testified he can lift a gallon of milk, which actually weighs *more* than five pounds. (Tr. 20, 55.) The ALJ also emphasized that Bailey has a reduction in spinal range of motion, not a complete

16

loss of spinal motion, and that he admitted regularly performing some daily tasks that require bending, twisting, and stretching, such as driving and folding laundry. (Tr. 20.) Furthermore, the ALJ noted that Bailey's August 2007 MRI results reflected only minor degenerative changes in his lumbar spine and no evidence of any significant foraminal stenosis or neural compression. (Tr. 24.) "Generally, the more consistent an opinion is with the record as a whole, the more weight [the Commissioner] will give to that opinion." 20 C.F.R.§ 20 404.1527(d); *see Smith*, 231 F.3d at 441 (discounting a treating physician's opinion where it, in addition to being internally inconsistent, was inconsistent with other substantial evidence of record).

Moreover, when the ALJ catalogued the limitations assigned by other physicians of record, a disparity between those opinions and the severe limitations articulated by Dr. Stensland was quite obvious. Dr. Shugart assigned Bailey only a fifty-pound lifting restriction; the state agency physicians opined that Bailey could perform light work with occasional postural movements; Dr. Stevenson said that Bailey was not limited in his ability to lift and could occasionally carry twenty pounds and had some limitations in bending, stooping, and crouching; and the functional capacity evaluation indicated that he was unable to perform a physically-demanding job or a job that required a certain position for more than one hour. (Tr. 19-20, 26); *see Schmidt v. Barnhart*, 496 F.3d 833, 842 (7th Cir. 2007) ("An ALJ . . . may discount a treating physician's medical opinion if . . . the opinion is inconsistent with the opinion of a consulting physician . . ., as long as he minimally articulates his reasons for crediting or rejecting evidence of disability." (citation and internal quotation marks omitted)).

In the end, "[w]eighing conflicting evidence from medical experts . . . is exactly what the ALJ is required to do." *Young v. Barnhart*, 362 F.3d 995, 1001-02 (7th Cir. 2004); *see Cannon v.*

17

*Apfel,* 213 F.3d 970, 974 (7th Cir. 2000) (emphasizing that the Court is not allowed to substitute its judgment for the ALJ by "reweighing evidence" or "resolving conflicts in evidence"). Here, the ALJ's consideration of Dr. Stensland's opinion, and her resolution of the conflicts between it and the other medical evidence of record, is supported by substantial evidence. *See Books*, 91 F.3d at 979 ("[I]n, the end, it is up to the ALJ to decide which doctor to believe—the treating physician who has experience and knowledge of the case, but may be biased, or . . . the consulting physician, who may bring expertise and knowledge of similar cases—subject only to the requirement that the ALJ's decision be supported by substantial evidence." (citation omitted and internal quotation marks omitted)). Therefore, Bailey's second argument fails to warrant a remand of the Commissioner's final decision.

### E. The ALJ's RFC Is Supported by Substantial Evidence

Finally, Bailey seemingly challenges the RFC assigned by the ALJ, conclusorily arguing that his "impairments are much more extensive than the ALJ acknowledges" and "[i]t is clear[] when the evidence is viewed in its totality that [he] is disabled." (Br. of Pl. 17.) Bailey's purported challenge to the assigned RFC, however, is unavailing.

In advancing this rather vague argument, Bailey sets forth a laundry list of his various spinal impairments (see footnote 3 *supra*) that he believes establish that he is disabled. (Br. of Pl. 17-18.) However, the diagnosis of an impairment(s) does not alone establish its severity and its resulting limitations. *See Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) ("The issue in the case is not the existence of these various conditions of [claimant's] but their severity and, concretely, whether . . . they have caused her such severe pain that she cannot work full time."); *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998) ("It is not enough to show that [claimant] had

received a diagnosis of fibromyalgia . . ., since fibromyalgia is not always (indeed, not usually) disabling."); *Bucholz v. Astrue*, No. 08-cv-4042, 2009 WL 4931393, at *11 (C.D. Ill. Dec. 15, 2009) ("The issue for disability benefits is not whether a claimant has a disease, but whether that disease affects her ability to work." (citing 20 C.F.R. § 404.1545(a)(1))).

Furthermore, contrary to Bailey's assertion, "[n]o evidence in the record suggests that the ALJ failed to consider the combined effects of [his] impairments." *Robinson v. Apfel*, No. 97 C 8727, 1999 WL 160068, at *7 (N.D. Ill. March 12, 1999). In fact, the ALJ's decision reflects just the opposite, as she expressly contemplated the combination of Bailey's impairments at several points in her five-step analysis. (*See* Tr. 16 (indicating that when assigning a RFC, she must consider "all of the claimant's impairments, including those that are not severe"), 17 (considering claimant's mental impairments "in combination"), 18 (stating that she considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence").) Indeed, the ALJ's discussion of the evidence of record was *extremely* thorough, as she penned more than eight pages when discussing in detail Bailey's various impairments. (*See* Tr. 18-27.)

Moreover, with the exception of Dr. Stensland's opinion, the RFC ultimately assigned by the ALJ is largely consistent, and in certain aspects even *more* conservative, than the medical source statements provided by the physicians of record. To review, Dr. Shugart, Bailey's treating orthopaedic surgeon, limited Bailey to lifting no more than fifty pounds; the state agency physicians opined that Bailey could perform light work with occasional postural movements; Dr. Stevenson said that Bailey was not limited in his ability to lift, could occasionally carry twenty pounds, should avoid uneven terrain, and had some limitations in bending, stooping, and

crouching; and the functional capacity evaluation indicated only that he was unable to perform a physically-demanding job or a job that required a certain position for more than one hour. Of course, when assigning a RFC, "an ALJ must consider the entire record, but the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). Here, "that is exactly what the ALJ did in weighing all of [Bailey's] physicians' opinions along with [his] testimony and the other record evidence." *Id*.

In short, Bailey's final argument amounts to no more than a plea to this Court to reweigh the evidence of record with the hope that it will come out in his favor this time. Of course, a plea to the Court to reweigh evidence is ultimately ineffective. *See Cannon*, 213 F.3d at 974 (explaining that the court is not allowed to substitute its judgment for the ALJ by "reweighing evidence"). Therefore, like his first two arguments, Bailey's final argument fails to necessitate a remand of the Commissioner's final decision.

## V. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED. The Clerk is directed to enter a judgment in favor of the Commissioner and against Bailey.

SO ORDERED.

Enter for this 2nd day of April, 2012.

                                                S/Roger B. Cosbey
                                                Roger B. Cosbey,
                                                United States Magistrate Judge